**Jerry CHRISTISON, Plaintiff,**

v.

**Aida ALVAREZ, present Administrator of the United States Small Business Administration, and Philip Lader, past Administrator of the United States Small Business Administration, Defendants.**

**No. CV 97–22–H–CCL.**

United States District Court,
D. Montana,
Helena Division.

Jan. 20, 1999.

James C. Hunt, Hunt & Molloy, Helena, MT, for Plaintiff.

Deborah K. Gunn, U.S. Small Business Admin., Washington, DC, Deanne L. Sandholm, Office of U.S. Atty., Helena, MT, for Defendants.

### *ORDER*

LOVELL, District Judge.

This matter came on for hearing on December 18, 1998, on Defendants' motion to dismiss or in the alternative for summary judgment. The court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1346. All parties are in agreement that the motion to dismiss should be treated as a motion for summary judgment. Upon consideration of the arguments, the briefs, and the affidavits submitted by the parties, the court is prepared to rule.

Plaintiff Jerry Christison ("Christison") filed an Amended Complaint alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended, by sexually discriminating against him in his capacity as Assistant District Director of the Helena office of the United States Small Business Administration ("SBA"). Christison's Amended Complaint also alleges that Defendants retaliated

against him when he objected to his hostile work environment and when he filed grievances[1] concerning the conditions of his employment.

### DISCUSSION

Summary judgment is appropriate when the court finds that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). A material fact is one which is relevant to an element of a claim or defense, and whose existence might affect the outcome of the suit. *T.W. Elect. Services, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). Disputes over irrelevant or unnecessary facts will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Christison worked at the SBA from January, 1973 through March 30, 1995. He was the Business Development Chief for the last eight years of his employment. In 1993, a female District Director ("DD") was appointed to the Helena SBA office. Christison retired from the SBA on March 31, 1995. On January 8, 1996, he contacted an SBA EEO counselor for the first time regarding his complaint against the DD of gender discrimination. Plaintiff alleged that the discriminatory acts occurred prior to his retirement.

On January 8, 1996, Christison discussed in detail his knowledge of the facts regarding the Helena SBA office prior to his retirement on March 31, 1995. Christison alleged to the EEO counselor that "Michelle [Johnston] was telling everyone that [the DD] wanted her to be her confidante and continually took projects to [the DD] prior to discussing them with Jerry, planned projects and trips, then E-mailed Jerry only after they had been approved by the DD." (Ex. E, Allegation # 1, p. 1.) Christison stated that "Michelle and Nora began reviewing SBDC centers which was the aggrieved's job." (Ex. E, Allegation # 1, p. 1.) The EEO counselor notes that "Jerry spent 50% of his time doing letters for the Director, check lists, project plans for other subordinate employees' projects, secretarial duties requiring keyboard skills and computer knowledge without proper training." (Ex. E, Allegation # 1, p. 1.) Christison also alleged that "Michelle Johnston and other female employees were promoted to positions they were not qualified for or to positions that did not exist. Jerry claims that he was intimidated into changing employee's PMAS ratings (ratings for females went up and Byron's went down) for each PMAS period." (Ex. E, Allegation # 1, p. 1–2.) (Byron Roberts was a male SBA employee supervised by Christison.) Christison alleged that "Michelle Johnston was given the opportunity to receive this training plus numerous other training and career development opportunities which used extensive travel money and eliminated the opportunity for both Byron and Jerry to travel for job related activities and meetings." (Ex. E, Allegation # 1, p. 2.) Christison alleged that he "was removed from the District Export Council as a member but sent to meetings to be Karen Peak's secretary." (Ex. E, Allegation # 1, p. 2.)

In his second allegation to the EEO counselor, Christison alleged that "[e]xtensive travel time was required outside of the normal work hours with no compensation for the male employees." (Ex. E, Allegation # 2, p. 1.) Christison also alleged that "[t]here were demeaning and embarrassing comments about older male employees in front of younger female employees." (Ex. E, Allegation # 2, p. 1.) Christison also alleged that he "was threatened with a 20 day suspension if he did not give Byron a suspension." (Ex. E, Allegation # 2, p. 1.) Christison further alleged that "Michelle felt empowered by [the DD] to use vulgar language toward Jerry that she never used before (during her EEO case) and many other times after Jo Alice became DD." (Ex. E, Allegation # 3, p. 3.)

---

1. Christison "filed three formal grievances and approximately two informal grievances based upon [the DD's] treatment of me. [Christison] challenged job ratings in writing on two occasions. [Christison] verbally challenged every job rating from [the DD]." Ex. A, Christison Affidavit, Pl.'s S.J. Brief, Docket No. 10.

Plaintiff filed an EEO complaint with the SBA Office of Equal Employment Opportunity and Civil Rights Compliance on February 9, 1996, which EEO complaint was dismissed by the SBA on March 29, 1996, for failure to comply with 29 C.F.R. § 1614.105(a)(1) of the U.S. Equal Employment Opportunity Commission ("EEOC"). This regulation requires federal employees to bring their Title VII complaints to the attention of the federal agency's EEO counselor within 45 days of the date of the allegedly discriminatory action. On February 3, 1997, the EEOC affirmed the SBA's dismissal, having determined that Plaintiff's EEO complaint was untimely pursuant to 29 C.F.R. § 1614.107(b).

█ The regulation applicable to Plaintiff's EEO complaint is specific to federal sector employment, and it provides in part that

(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105 (1998). The policy underlying this statute of limitations provision is to encourage quick and informal resolutions of employment disputes involving charges of discrimination and civil rights violations. Exhaustion of administrative remedies is a prerequisite to filing a Title VII sex discrimination complaint in district court. *Leorna v. United States Department of State,* 105 F.3d 548, 550 (9th Cir.1997).

Because Plaintiff waited nine months before consulting an EEO counselor, he clearly missed the 45–day deadline imposed by 29 C.F.R. § 1614.105(a)(1). Defendants' motion for summary judgment seeks the dismissal of Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted, specifically citing Plaintiff's failure to exhaust administrative remedies as the ground

therefor. Defendants assert that the 45–day limitations period begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 (3rd Cir.1994). However, Defendants' position is that it is knowledge of the act itself that is relevant; knowledge that the act is discriminatory and serves as a foundation for a viable legal claim is not pertinent. *Oshiver,* 38 F.3d at 1391 (discovery rule inapplicable to discriminatory discharge claim as plaintiff was aware of injury on date of discharge even if she was deceived about discriminatory motive); *Jordan v. SmithKline Beecham, Inc.,* 958 F.Supp. 1012 (E.D.Pa.1997) (discovery rule did not toll time limit for filing discriminatory discharge claim although plaintiff did not discover basis for claim until time period had lapsed as he was aware of his injury when he lost his job).

In this case, Defendants assert that Christison had sufficient knowledge of the facts and circumstances of his employment preceding and giving rise to his early retirement on March 31, 1995, to have been on notice of the possibility of sex discrimination and to have sought EEO counseling. Defendants assert that it is not relevant whether within the 45 day limitations period the Plaintiff had proof of the alleged discriminatory motive behind the complained of actions since he had notice of the actions and reasonably should have inquired into Defendants' motivations.

Christison counters that while he knew before his retirement he was being generally harassed and treated unfairly by the new District Director ("DD") of the Helena SBA office, he had interpreted those actions as personal attacks and did not understand at the time that these actions were instances of gender discrimination. Christison asserts that it was not until he attended an SBA party on December 6, 1995, that he was told by former co-worker Nora Walsh that the DD had set him up for failure in order to replace him with a woman and that the DD had an agenda of promoting women and demoting men. Therefore, Christison urges the court to use its equitable powers to toll

the limitations period until December 6 1995, and to conclude that Plaintiff timely pursued his administrative remedies on January 8, 1996. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (limitations period subject to waiver, equitable estoppel and equitable tolling).

Equitable tolling is typically applied in cases in which a plaintiff timely files a defective pleading or is tricked by the adversary into allowing the deadline to pass. *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Ninth Circuit has also applied equitable tolling when the plaintiff was unaware of the prerequisite administrative procedures. *See Leorna,* 105 F.3d at 551. None of these circumstances appears to exist in this case.

However, Christison alleges that the DD actively mislead him regarding the reason for his alleged harassment or unfair treatment: when Christison asked the DD why she treated him unfairly and harassed him, she told him that his work was not satisfactory. Christison believes that such statements by the DD constitute active misconduct justifying equitable tolling of the limitations period. Defendants disagree, arguing that the limitations period cannot be tolled every time an agency gives a reason for its employment decisions that an employee deems to be pretextual. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 644 (5th Cir.1988). The court finds itself in agreement with the Defendants on this point because otherwise the equitable tolling exception would swallow the 45-day limitations rule.

Yet, an employer may give plausible excuses for employment decisions that would—in the absence of any other evidence—prevent an employee from perceiving any discrimination. In such a case, it is not reasonable to expect the employee to file a discrimination claim when no discrimination can be perceived. This issue was addressed briefly in the Ninth Circuit case of *Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir.1985), which determined that the appropriate test is whether "a similarly situated person with a reasonably prudent regard for his rights" would have sufficient knowledge of the facts supporting a charge of discrimi-

nation at the time of the employment action. *Id.* at 414.

■ However, the federal employee need not have a proven claim during the first 45-days after the action. Because the employee is only being required to seek EEO counseling within 45 days, what the employee must have is notice of the *possibility* of discrimination. This point is illustrated in *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209 (5th Cir. 1992), which addresses an ADEA claim having a 300-day limitations period, during which an employee must file an age discrimination charge with the EEOC. The *Christopher* panel considers the quantum of evidence necessary to prompt an employee to seek out EEO counseling, and determines that (1) "the showing required for a *prima facie* employment discrimination claim is minimal", (2) the limitations period begins to run "even if the employee is not aware of *all* the evidence that he will ultimately rely upon at trial", and (3) "[t]he showing required at the stage of filing charges with the EEOC is even more lenient, because the purpose of the filing is only to initiate an EEOC investigation." *Christopher,* 950 F.2d at 1217.

Similarly, in *Hill v. U.S. Dept. of Labor,* 65 F.3d 1331, 1338 (6th Cir.1995), a panel considering whether estoppel should be applied to toll a 30-day limitations period determined that it is the plaintiff who must prove (1) wrongful concealment of discrimination by the defendants, (2) failure of the plaintiff to discover the operative facts of the cause of action (obviously through no fault of his own), and (3) plaintiff's due diligence until discovery of the facts. *Id.* at 1335. The plaintiffs in *Hill* argued that they did not interpret the employer's actions as being discriminatory until after the limitations period had passed and that the employer's explanations (that plaintiffs were lazy, slow, and costly) had fraudulently concealed the discriminatory nature of its actions. The panel responded that "[t]his argument confuses notice with evidence." *Id.* at 1338. Equitable estoppel requires both misconduct by the defendant and due diligence by the plaintiff: "To hold that a tolling or suspension of the limitation of actions must continue unless or until proof positive existed of a wrong (which might

never be established in fact) would abort the policy of ... diligence in the equitable principles permitting suspension of them." *Id.* (*quoting Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1478). While there are no bright lines, this court concludes that wrongful concealment of discrimination means more than simply telling an employee his work is unsatisfactory and due diligence means more than simply waiting for the evidence necessary to file a slam dunk case in federal court.

In the Third Circuit case wherein an employer was found to have fraudulently concealed its discriminatory discharge, the panel reversed the district court and applied the equitable estoppel doctrine because the employer actively mislead the plaintiff by telling her that she was discharged because there was no work available. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3rd Cir.1994). It was not until the plaintiff learned that another individual had been hired that the facts were sufficiently known to her such that a reasonable person would perceive the injury of unlawful discrimination. *Id.* at 1392. It is worth noting, also, that in cases in which employers fraudulently mislead employees the employer's acts are of a type that can be objectively determined to be misleading, e.g., there either is or is not a job available and the employer either has or has not lied to the employee. In this case, Plaintiff's accusation that he was fraudulently mislead (by the DD's explanation that his work was unsatisfactory) is purely subjective because the DD's explanation for her actions cannot be objectively evaluated as being either true or false.

In the Fourth Circuit, a panel considered a factually similar case in which the plaintiff was allegedly forced into early retirement. *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 199 (4th Cir.1990). The employer also allegedly concealed the fact that plaintiff's position had been filled by a younger man approximately nine months after the plaintiff's last day. The panel refused to equitably toll the limitations period because it determined that the plaintiff was aware of sufficient facts within the limitations period to enable him to file his complaint. The panel stated that the "[d]oc-

trine of equitable tolling does not apply merely because [plaintiff] learned of additional information that appeared to make the alleged discrimination more obvious." *Id.* at 199.

Christison's earliest allegations in this case are nearly identical to those of the plaintiff in *Olson:* "during this period [before retirement] his working conditions became intolerable, that he was subjected to discrimination and that it was made clear to [him] by his supervisor's actions and words that his services were not desired." *Id.* 202. The Fourth Circuit panel concluded that the plaintiff was sufficiently on notice "to inquire whether there was [a] discriminatory motive for the [constructive] discharge." *Id.* (*quoting Hamilton v. 1st Source Bank*, 895 F.2d 159, 164 (4th Cir.1990)). The panel added that "[i]f equitable tolling applied every time an employer advanced a non-discriminatory reason for its employment decisions, it would be 'tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute.'" *Id.* at 203 (*quoting Blumberg v. HCA Management Co.*, 848 F.2d 642, 644 (5th Cir.1988)).

■ A review of the allegations Christison made in his initial contact with the agency EEO counselor on January 8, 1996, shows that Plaintiff was aware that the harassing and unfair treatment he had received revealed certain elements of gender discrimination. *See* Exhibit E, Plaintiff's Response Brief (Docket No. 10). To begin with, Christison identifies the point in time when his work environment deteriorated to be when the new female SBA employee arrived at the Helena SBA office to take the position as District Director (DD), and the new DD and Michelle Johnston went on a business trip to Spokane together. (*See* Ex. E, Allegation # 1, p. 1.) Michelle Johnston was an SBA employee in a position ranked lower than Christison's who allegedly wanted to be promoted into Christison's position. (*See* Ex. B, Affidavit of Mary Conway–Jepsen, ¶ 8.) The court assumes, for purposes of this summary judgment motion, that Christison was not aware of this latter allegation at the time of his retirement. Over one year after Christison's retirement, Michelle

Johnston was in fact promoted to Christison's position by an SBA committee: David Davidson, Assistant District Director for Finance and Investment, Gail Hatch, Assistant District Director for Administration, and Michael Bayuk, Helena District Counsel. *See* Affidavit of Michael Bayuk, Ex. 1, Def.s' Brief, Docket No. 13. Again, the court assumes that on March 31, 1995, Christison was unaware that Johnston would be promoted to his position after his retirement.

However, many facts indicating some type of gender discrimination were known to Christison before he retired from the SBA, as his statements to the EEO counselor attest. Still, Christison did not contact an EEO counselor to initiate an investigation or commence informal resolution of his complaints. Instead, Christison took early retirement and accepted $25,000 in severance pay. It was not until nine months later, after he discovered what he thought was a smoking gun in the person of former co-worker Nora Walsh, that he contacted an EEO counselor to make the complaint of sexual discrimination.

Applying the test set forth in *Boyd,* the court must ask whether sufficient facts to support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights. *See Boyd,* 752 F.2d at 414. It seems apparent that the answer must be yes, because, in fact, Christison was painfully aware of unfair disparate treatment of men and women in the Helena SBA office. That being the case, it seems clear that a similarly situated person with a reasonably prudent regard for his rights would have complained to an EEO counselor. At the point of his retirement Christison may or may not have had enough evidence to prevail in court on a gender discrimination claim; but the conclusion that he had strong suspicions of gender discrimination and could have filed an EEO claim seems inescapable given the facts known to him prior to his retirement.

Therefore, given the 45–day limitations period provided by 29 C.F.R. § 1614.105(a)(1), the court concludes that Christison was not entitled to wait to discover proof positive of the *reason* that he had been discriminated against by the Helena SBA District Director. Like all federal employees, he was required to take his suspicions and his complaints to an EEO counselor to commence an investigation and possibly to resolve the dispute informally. Having accepted the benefits he obtained through early retirement, Christison is not now entitled to leap over all administrative remedies and litigate his claim in federal court.

Because Christison failed to exhaust his administrative remedies, his claim is time-barred, and Defendants' motion for summary judgment should be granted as to all claims asserted by Plaintiff's First Amended Complaint.

Accordingly,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED, Plaintiff's First Amended Complaint is DISMISSED, and all relief is denied. Let judgment enter.

The Clerk is directed forthwith to notify the parties of entry of this order.

