Ronny C. ALLISON, et al., Plaintiff,

v.

CITY OF FORT WORTH, TEXAS, Defendant.

No. 4:98–CV–646–A.

United States District Court, N.D. Texas, Fort Worth Division.

July 22, 1999.

Barry Stuart Zisman, Attorney at Law, Mark Douglas Perdue, Attorney at Law, Jeffrey C Poster, Attorney at Law, Zisman Law Office, Dallas, TX, for plaintiffs.

Gary L. Ingram, Attorney at Law, Jackson Walker, Fort Worth, TX, for defendant.

*MEMORANDUM OPINION and ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of defendant, City of Fort Worth, Texas, for summary judgment. The court, having considered the motion, the response of plaintiffs, Ronnie C. Allison ("Allison"), Paul H. Rider ("Rider"), Dennis J. Wynne ("Wynne"), Todd Ikens ("Ikens"), Robert Finley ("Finley"), and Mary Collins, as independent executrix of the Estate of Brian Collins ("Collins"), Deceased ("executrix"), the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

## I.

### *Plaintiffs' Claims*

On July 29, 1998, plaintiffs filed their original complaint in this action.[1] On December 31, 1998, plaintiffs filed their first amended complaint, having first obtained leave to do so. *See* Dec. 29, 1998, order.

Plaintiffs allege: Defendant utilizes examinations to determine promotion eligibility. Firefighters who wish to be promoted take an examination and are placed on a promotion list according to their scores. The list remains in effect for one year. Plaintiffs are all Caucasian. In 1995, Allison, Rider, and Wynne took the examination and were placed on the list to be promoted to battalion chief. They were not promoted, because the list expired before positions became available. In 1996, the top three positions on the list for promotion to battalion chief were occupied by minority firefighters. Ten days before the list was due to expire, those candidates were promoted to newly created battalion chief positions so that they did not "die on the list." Defendant's city council considered the fact that minorities were positioned at the top of the list to offer a unique opportunity. In 1997, Ikens, Col-

1. At the time the complaint was filed, Collins was alive. By order signed June 15, 1999, the court granted a motion for substitution naming his executrix as a plaintiff in this action in place of Collins.

lins, and Finley were positioned at the top of the list for promotion to captain. In 1996, "overages," that is, the creation of temporary positions in anticipation of upcoming retirements, were used to promote minority candidates to captain in order to prevent their names from dying on the list. Because of the use of overages in 1996, captain positions were not available in 1997 for Ikens, Collins, and Finley.

Plaintiffs allege that by discriminating against them on the basis of their race, defendant violated (1) the Equal Protection Clause of the Fourteenth Amendment, (2) Title VII, 42 U.S.C. §§ 2000e to 2000e–17, (3) the Equal Rights Amendment of the Texas Constitution, art. I, § 3, and (4) the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.00. Plaintiffs seek the promotions they say they were denied, plus lost wages, punitive damages, attorneys' fees, and costs.

## II.

### Grounds of the Motion

Defendant seeks judgment on each of plaintiffs' claims. Specifically, defendant asserts:

A. Plaintiffs cannot establish a *prima facie* case of discrimination, because they cannot demonstrate the existence of an allegedly discriminatory policy, practice, or custom of promoting minority race employees into overages.

B. Collins, Ikens, and Finley cannot establish a *prima facie* case of discrimination, because they were not eligible to be promoted to the rank of captain at the time the allegedly discriminatory promotions occurred.

C. Wynne, Allison, and Rider cannot establish a *prima facie* case of discrimination, because they were not eligible to be promoted to the position of battalion chief at the time the allegedly discriminatory promotions took place. And, Rider was, in fact, promoted and did not suffer an adverse employment action.

D. Plaintiffs cannot establish a *prima facie* case of discrimination in promotions, because they cannot show that they were treated in a disparate manner.

E. Plaintiffs cannot establish a *prima facie* case, because none of them had a vested right to demand creation of promotion vacancies and none suffered an ultimate adverse employment action as a result of the creation of additional positions into which minority employees were promoted.

F. Plaintiffs' claims under Title VII and the TCHRA are time-barred, because their administrative charges were not timely filed.

G. Finley, Ikens, and Collins failed to exhaust available administrative remedies by failing to timely file charges of discrimination and obtain right-to-sue letters prior to instituting this action.

H. Plaintiffs cannot establish a *prima facie* case of discrimination under the Texas and United States Constitutions, because they cannot demonstrate that they had a right to be promoted into overages or created positions.

I. Texas does not recognize a claim for money damages and attorneys' fees under Article I, § 3 of the Texas Constitution.

J. Plaintiffs' claims of discrimination and unequal treatment under the United States and Texas Constitutions are barred, at least in part, by the two-year statute of limitations.

K. Wynne's claims under Title VII and the TCHRA are time-barred, because he failed to timely institute this action after receiving his notice of right to sue.

## III.

### Undisputed Facts

The facts pertinent to the motion for summary judgment are complex and lengthy. Accordingly, they are best discussed in connection with the pertinent legal arguments.

The court notes that each side has filed a motion to strike summary judgment materials submitted by the other. The court is not inclined to rule specifically on the motions, but, instead, will give the summary judgment evidence whatever weight, if any, it may deserve.

## IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *For-*

syth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons. v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348.

## V.

### Establishing a Prima Facie Case

**A. Title VII and TCHRA.**

To establish a *prima facie* case of race discrimination in promotions, each plaintiff must show that he is a member of a protected class,[2] that he was qualified to be promoted and applied to be promoted to an available position, that despite his qualifications he was not selected, and that a minority race candidate with equal or lesser qualifications was selected for the position. *Reno v. Metropolitan Transit Auth.,* 977 F.Supp. 812, 823 (S.D.Tex.1997). In a disparate treatment case, such as this one, plaintiffs bear the burden of proving intentional discrimination. *Merrill v. Southern Methodist Univ.,* 806 F.2d 600, 605 (5th Cir.1986). Because the TCHRA is the state counterpart to Title VII, the same standards apply. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991); *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Thus, if summary judgment is appropriate on the Title VII claims, it is also appropriate on the TCHRA claims. *Pat-*

---

**2.** Defendant admits that plaintiffs are members of a protected class. Title VII is not limited to discrimination against members of any particular race. *McDonald v. Santa Fe*

*Trail Transp. Co.,* 427 U.S. 273, 278–79, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Patton v. United Parcel Serv., Inc.,* 910 F.Supp. 1250, 1262 (S.D.Tex.1995).

*ton v. United Parcel Serv., Inc.,* 910 F.Supp. 1250, 1262, 1270 (S.D.Tex.1995).

Defendant maintains that plaintiffs cannot establish a *prima facie* case of discrimination based on race. The court agrees. In particular, plaintiffs refer to a pattern and practice utilized by defendant to discriminate in promotions by making sure that minority candidates receive promotions when they are eligible, but not providing the same opportunities for white candidates. Yet each of the plaintiffs testified that he had never been discriminated against except for the specific incident about which he complains in this lawsuit and that he was not aware of any other instances of discrimination against white candidates for promotion. Plaintiffs further admitted that each person who was promoted was qualified and that no white candidate was skipped over so that a minority candidate could be promoted. No admissible summary judgment evidence sufficient to create a genuine fact issue as to a discriminatory pattern or practice was presented.[3]

■ Plaintiffs have a difficult, if not impossible, burden to meet, because their claims regarding ability to be promoted are based on speculation. *Waggoner v. City of Garland,* 987 F.2d 1160, 1164 (5th Cir.1993) (speculation is not competent evidence of intentional discrimination). Each testified that promotions are awarded according to scores made on annual tests (with points added based on seniority in the fire department). The person with the highest test score and most seniority is virtually guaranteed a promotion, but whether anyone else who takes a particular test will be promoted is just luck of the draw. Test scores are only good for one year and not every person eligible to take a test does so. Here, none of the plaintiffs was on the promotion lists when the allegedly discriminatory promotions took place. In other words, each is forced to speculate that but for alleged discrimination in a prior or later year, he would have been promoted. However, subjective belief, no matter how genuine, is not enough to raise a fact issue for a jury. *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 96 (5th Cir.1991).

■ Collins, Ikens, and Finley were lieutenants who were thirteenth, fourteenth, and fifteenth, respectively, on the 1996–97 captain's eligibility list. The first twelve persons on the list were promoted; no one else on the list received a promotion. These men contend that they would have been promoted but for the creation of additional captain positions before the expiration of the preceding captain's list in May 1996. However, plaintiffs cannot show, and have not shown, that they were similarly situated to those who were promoted in May 1996, because they were not eligible, *i.e.,* qualified, to be promoted at that time.[4] Even if they could make out a *prima facie* case, defendant has adduced summary judgment evidence that the additional positions were created to reduce a manpower shortage in training and fire prevention services. Plaintiffs have submitted an alleged copy of time and attendance records of the fire prevention department for the period of May 25, 1996, to June 7, 1996.[5] App. to Pls.' Br., tab 5 at 20–25. These pages show hours lost to vacation, sick leave, compensatory time, family illness, training, and city business.[6] The records do not create a genu-

---

3. The court notes that the testimony of Richard Jones, Pablo Escamilla, John Collins, and Robert Cassaday is not limited to any particular time period; thus, there is no way to know whether their testimony is relevant. Nor is their testimony based on anything more than hearsay.

4. Moreover, although they contend that they would have been promoted but for the creation of additional positions the year before, such claim is based on sheer speculation.

Had the promotions not been given the prior year, the persons who did not receive them could well have taken the next test and scored higher than Collins, Ikens, and Finley.

5. They do not present any such records for the training department.

6. The court notes that the court's copy of the appendix contains only one partial page of attendance records, whereas the original has several pages.

ine fact issue as to whether defendant had a legitimate need for additional captains in the fire prevention and training departments of the fire department. And, even if they did, plaintiffs would still have to show that defendant's reason for promoting additional captains was pretext for discrimination.[7] *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 141 (5th Cir.1996).

The remaining plaintiffs, Rider, Allison, and Wynne, claim that they were discriminated against in seeking to become battalion chiefs. In 1995, these three took the promotional exam for the position of battalion chief. Wynne was fifth, Rider, sixth, and Allison, seventh, out of seven who passed the test. Defendant promoted the first four persons on the list—three white males and one black male. The others "died on the list." When the next eligibility test was given, Rider scored sixth out of the six who passed the test. Allison took the test but flunked it; Wynne did not take the test. The two highest-scoring candidates were promoted into vacant positions. The other four, including Rider, were promoted as a result of the creation of new positions (and not merely overages). Plaintiffs contend that had they been treated like minority candidates, defendant would have created positions for them before the 1995 list expired.

As previously stated, plaintiffs have not demonstrated that there is a genuine fact issue as to a pattern or practice of reverse discrimination. *See Cooper v. Federal Reserve Bank,* 467 U.S. 867, 875–76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (proving isolated or sporadic discriminatory acts is insufficient to establish a *prima facie* case

of a pattern or practice of discrimination; rather, discrimination must be shown to be the standard operating procedure of defendant). And, defendant has shown that the so-called overages have been used to benefit whites as well as minority candidates for promotion.[8] Plaintiffs have not shown that defendant's reason for creating the sixth battalion in July 1997 was discriminatory. The document attached as tab 12 to the appendix to plaintiffs' brief in response to the motion for summary judgment is not verified or authenticated. The document is not consecutively numbered as required by Rule 56.6(b)(3) of the Local Civil Rules of the United States District Court for the Northern District of Texas and the court cannot tell if pages are missing.[9] (The first number appears to be 890000, followed by a page without a number, followed by 000004, followed by more unnumbered pages, and the pages eventually include numbers 000066 and 000068, among others.) Even if considered competent summary judgment evidence, the alleged transcript of city council proceedings shows that an additional position was created so that Rider could be promoted, even though he was at the bottom of the list at the time the sixth battalion was created. Thus, all persons on the promotion list at the time were treated equally.[10]

**B. Equal Protection.**

 To state a claim under 42 U.S.C. § 1983 against a municipality, one must demonstrate the existence of a policy or custom that caused a violation of one's constitutional rights. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113

---

7. It is not the job of the court to second-guess defendant's business decisions. *Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 372 (5th Cir.1997).

8. Thus, even if, as plaintiffs claim, an overage was created so that Cager Mitchell could be promoted before the 1995 list expired, there is no competent summary judgment evidence

that discrimination was the motive for the promotion.

9. The copy provided to the court does not contain the same pages as the original document filed with the clerk.

10. The transcript also reflects that the creation of new positions was recognized as an exception rather than a rule.

S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the court examines (1) whether plaintiffs' harm was caused by a constitutional violation and, if so, (2) whether defendant is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Here, plaintiffs argue that because certain city council members publicly discussed promoting minority candidates, defendant is liable for any harm that came to plaintiffs as a result. The law is clear, however,

> ... that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694, 98 S.Ct. 2018. And, even if it is shown that defendant violated its own policies or procedures, plaintiffs still must show that such violation amounted to a trespass of their federal constitutional rights. *Levitt v. University of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985). In other words, a constitutional violation does not necessarily occur whenever a governmental entity violates its own rules. *Id.*

■ With regard to the motion for summary judgment as to their § 1983 claims, plaintiffs have the same burden of proof as they did under Title VII. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). That is, they must first prove intentional discrimination. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir.1995); *Marcantel v. State of La., Dep't of Transp. & Dev.*, 37 F.3d 197, 198 n. 4 (5th Cir.1994) (the *McDonnell Douglas* allocation of burdens applies to claims under §§ 1981 and 1983). For the reasons discussed in the preceding subsection, plaintiffs have not raised a genuine issue of material fact with regard to any of their discrimination claims, that is, that they were treated differently than anyone similarly situated. Thus, they cannot go forward with their equal protection claims.

## C. Claims Under the Texas Constitution.

■ Plaintiffs apparently seek money damages for defendant's alleged violation of the Texas Constitution. Texas has no statutory remedy similar to § 1983. *Albertson's, Inc. v. Ortiz*, 856 S.W.2d 836, 839 (Tex.App.—Austin 1993, writ denied). Nothing more than equitable protection is provided by the Texas Constitution. *Huckabay v. Moore*, 142 F.3d 233, 242 (5th Cir.1998); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex.1995).

■ To the extent that plaintiffs seek equitable relief under the Texas Constitution, they have failed to show that they face a real and immediate threat of present or future harm and not just past harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir.1997). Much less have they shown that there is any underlying violation of the Texas Constitution that would support such relief.

## VI.

### Limitations

### A. Title VII and TCHRA.

■ Limitations on a Title VII claim starts running on the date the discriminatory act occurs, not at the time when the consequences of the act become most painful. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Merrill*, 806 F.2d at 605. The legislative history of Title VII shows that Congress intended the filing period to act as a statute of limitations instead of a jurisdictional requirement. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The United States Supreme Court has described the period as a requirement that,

like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Id.* at 393, 102 S.Ct. 1127.

A charge of discrimination under Title VII must be filed with the EEOC within 180 days of the alleged discriminatory action, unless the charging party instead files his claim with the appropriate state referral agency, in which case he has 300 days in which to file a complaint. 42 U.S.C. § 2000e–5(e)(1). In order to qualify for the 300-day period mentioned in the statute, the charging party must institute proceedings with the state referral agency. *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.,* 139 F.3d 532, 537 (5th Cir. 1998); *Blumberg v. HCA Management Co.,* 848 F.2d 642, 646 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *Mennor v. Fort Hood Nat'l Bank,* 829 F.2d 553, 555 (5th Cir. 1987). A complaint based on the TCHRA must be filed with the Texas Commission on Human Rights not later than the 180th day after the date the alleged unlawful employment practice occurred. TEX. LAB. CODE ANN. § 21.202 (West 1996).

In addition to timely filing a charge of discrimination, a plaintiff must also institute his action within ninety days after receiving notice of right to sue. 42 U.S.C. § 2000(e)–5(f); *Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1027 (5th Cir.1988). An action that is not timely filed is time-barred. *Berry v. CIG-NA/RSI–CIGNA,* 975 F.2d 1188, 1191 (5th Cir.1992).

In response to defendant's contention that their claims are time-barred, plaintiffs argue that they were "unaware of the discriminatory scheme that victimized them until creation of the Sixth Battalion and related events on July 1, 1997." Br. in Resp. to Mot. for Summ. J. at 21–22. This position flies in the face of plaintiffs' pleadings that defendant's "established custom and usage" was to discriminate by using overages to benefit minorities, First Am. Compl. at 3, ¶ 13, and their arguments that defendant had a "long established policy" and engaged in a "continuous and systematic practice of racial discrimination ... over a period of years." Br. in Resp. to Mot. for Summ. J. at 7, 10. It is also contradicted by the fact that Wynne first filed a charge of discrimination on July 23, 1996, alleging discrimination because of defendant's refusal to create an overage position for him. In any event, plaintiffs do not cite to any evidence to support their claim that they were unaware of the "devious discriminatory policy" until 1997. *Id.* at 23. Normally, the loss of a promotion is an act of permanence that alerts a plaintiff that his rights have been violated. *Dupont–Lauren v. Schneider (U.S.A.), Inc.,* 994 F.Supp. 802, 816 (S.D.Tex.1998). Time starts running when a plaintiff knows of the act—here, denial of promotion—not when he perceives a discriminatory motive caused the act. *Pacheco v. Rice,* 966 F.2d 904, 906 (5th Cir.1992).

Plaintiffs wrongly assume that they had 300 days to file their charges of discrimination. (They make no mention of the 180-day filing requirement of the TCHRA.)[11] As stated, the 300 days applies only if the charge is filed with the deferral agency. *Webb,* 139 F.3d at 537; *Blumberg,* 848 F.2d at 646. Plaintiffs, except Wynne, present no evidence that they filed their charges within 180 days of the alleged discriminatory acts or that the 300-day time period applies.[12] Even assuming that plaintiffs had 300 days in which to file their charges, they have not raised a genuine fact issue about having done so.

11. Thus, there is no question but that plaintiffs' claims (except maybe for those of plaintiff Wynne) under the TCHRA are time-barred.

12. Although the original charges filed by Ikens and Finley were allegedly lost by the EEOC, the court notes that the paperwork was supposedly prepared by plaintiffs' attorneys, who also prepared the later "replacement" charges. These papers do not reflect that plaintiffs requested that they be filed with both the EEOC and the state or local agency.

Plaintiffs attempt to argue that, because two of them were subject to continuing acts of discrimination by defendant (as evidenced by acts of retaliation), limitations should be tolled as to all of them. The facts alleged simply do not fit a continuing violation theory. *See Berry v. Board of Supervisors,* 715 F.2d 971, 979 (5th Cir. 1983). Moreover, retaliation is not a claim being urged. Nor could it be, since none of the plaintiffs filed a charge of retaliation and received a notice of right to sue before this case was filed. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995); *Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir.1990).

Wynne did file a charge of discrimination with the EEOC and the Texas Commission on Human Rights [13] within 180 days of the expiration of the 1995 promotion list for battalion chief. On August 21, 1996, EEOC issued its notice of right to sue, stating that it had concluded that there was insufficient basis on which to proceed with the investigation and that the charge was therefore dismissed. The notice clearly provided:

> IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN 90 DAYS FROM THE RECEIPT OF THIS NOTICE OF RIGHT TO SUE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

Nevertheless, Wynne failed to timely file suit. He now claims that his failure was caused by assurances of Cager Mitchell that there was nothing wrong with the way he was treated. However, his self-serving statements do not raise a genuine fact issue as to whether Mitchell tried to talk him out of pursuing his right to sue, much less that Mitchell had authority to do so on behalf of defendant. Wynne simply offers no evidence of affirmative misconduct by defendant that lulled him into inaction. *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

### B. *Equal Protection.*

■ Because § 1983 does not have a limitations provision, courts borrow from the law of the forum state. Texas's two-year statute of limitations applies. *National Ass'n of Gov't Employees v. City Public Serv. Bd.,* 40 F.3d 698, 713 n. 22 (5th Cir.1994). Since the suit was filed July 29, 1998, all § 1983 claims accruing before July 29, 1996, *i.e.,* those of Wynne, Allison, and Rider, are barred.

## VII.

### ORDER

For the reasons discussed herein,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiffs take nothing on their claims against defendant, and that such claims be, and are hereby, dismissed with prejudice.

### FINAL JUDGMENT

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES, and DECREES that plaintiffs, Ronnie C. Allison, Paul H. Rider, Dennis J. Wynne, Todd Ikens, Robert Finley, and Mary Collins, as independent executrix of the Estate of Brian Collins, Deceased, take nothing on their claims against defendant, City of Fort Worth, Texas, and that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS, ADJUDGES, and DECREES that defendant have and recover its court costs from plaintiffs, jointly and severally.

---

**13.** The appropriate box requesting that the charge be filed with both the EEOC and the

state agency is checked on his original application.